UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JERI NILSEN,

     Plaintiff,

  v.

JO ANNE B. BARNHART, Commissioner of Social Security Administration,

     Defendant.

Case No. C05-0453-MJP-JPD

REPORT AND RECOMMENDATION

Plaintiff Jeri Nilsen proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (the "Commissioner"). The Commissioner denied plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends reversing the ALJ's decision and remanding for further administrative proceedings.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff is a fifty-five year old woman with a high-school education, some college course work, and vocational training. AR 89, 131, 165. From 1978 to 1987, she worked in the healthcare industry as an administrative assistant and a patient relations representative. AR 160. Plaintiff was insured for purposes of DIB through December 31, 1993, (her "date last insured" or "DLI"). AR 19.

In 1986, plaintiff underwent surgery and subsequently began to experience fecal

REPORT AND RECOMMENDATION
PAGE -1

incontinence. AR 394-99. Following surgery, her work record reveals a fourteen year employment gap. AR 160. However, from 1997 to 1999 she received payments from the Washington State Department of Social and Health Services ("DSHS") for in-home care she provided to her mentally retarded adult daughter.[1] AR 122, 126, 387-90. She also worked for approximately one month as a facilities coordinator from July to August 2001. AR 160.

On February 22, 2002, almost a decade after her date last insured, plaintiff applied for DIB. AR 113-15. She alleged disability beginning on October 1, 1988, from fecal incontinence with complications caused by autoimmune disease and bleeding. AR 125. Her application was denied both initially and upon reconsideration. AR 51-68. Plaintiff requested a hearing and on September 28, 2004, an ALJ issued a decision denying plaintiff's request for benefits. AR 19-30, 69-71. The ALJ determined that plaintiff's in-home care for her daughter constituted substantial gainful activity. AR 29. He nevertheless continued the sequential evaluation process and found that, although she suffered from severe fecal incontinence, the impairment did not prevent her from performing her past relevant work. AR 29.

Plaintiff requested review of the decision, but the Appeals Council denied her request. AR 6-9, 14. The ALJ's September 28, 2004, decision therefore became the Commissioner's final decision for purposes of this Court's review. On March 21, 2005, plaintiff filed this civil suit challenging the Commissioner's decision. Dkt. No. 1.

## II. JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

The district court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in

---

[1] Plaintiff placed her daughter in a group home in August 1999. AR 135, 145, 391. In 2001, she worked for two months as a facilities coordinator in a care home. AR 126.

the record as a whole. *See* 42 U.S.C. § 405(g); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal citations omitted). Substantial evidence is defined as more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Smolen,* 80 F.3d at 1279. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Where the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Smolen*, 80 F.3d at 1292).

If the court determines that the ALJ erred, the court has discretion to remand for further proceedings or to award benefits. *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990) (citations omitted). The court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002).

> Such a circumstance arises when: (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77.

## IV. EVALUATING DISABILITY

As the claimant, Ms. Nilsen bears the burden of proving that she is disabled within the meaning of the Social Security Act. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (citations omitted). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months[.]" 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(B). A claimant is disabled only if her impairments are of such severity that she is not only unable to

do her previous work, but cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. *See* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

The Social Security regulations set out a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must establish that she is not engaging in any substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant does so, then at step two, the claimant must establish that she has one or more medically severe impairments or combination of impairments that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant who meets one of the listings for the twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether the claimant can still perform that work. *Id.* If the claimant is not able to perform her past relevant work, then the burden shifts to the Commissioner at step five to show that the claimant can perform some other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Tackett*, 180 F.3d at 1099-100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found

REPORT AND RECOMMENDATION
PAGE -4

disabled and benefits may be awarded.

## V.  DECISION BELOW

On September 28, 2004, the ALJ issued a decision denying plaintiff's request for benefits finding:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act, but is insured for benefits only through December 31, 1993.

2. The claimant engaged in substantial gainful activity in 1998 and 1999. She has not engaged in substantial gainful activity since that time.

3. The claimant's fecal incontinence and idiopathic hypereosinophilic syndrome are considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(c).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. I find that the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of this decision.

6. On and before the date that her insured status expired, the claimant retained the residual functional capacity to lift or carry 20 pounds occasionally and 10 pounds frequently. She could stand or walk for six hours in an eight hour workday. The claimant could sit for six hours in an eight hour workday. She could occasionally climb stairs, but could not climb ladders.

7. Through the date that her insured status expired, the claimant's past relevant work as a patient relations coordinator and an administrative assistant did not require the performance of work-related activities precluded by her residual functional capacity (20 CFR § 404.1565).

8. The claimant's medically determinable fecal incontinence and idiopathic hypereosinophilic syndrome did not prevent the claimant from performing her past relevant work on or before the date that her insured status expired.

9. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date that her insured status expired (20 CFR § 404.1520(f)).

AR 29.

## VI.  ISSUES ON APPEAL

There are three issues that require review.

A. Did the ALJ err by concluding that the plaintiff's in-home care of her adult mentally-retarded child constituted "substantial gainful activity"?

B.  Did the ALJ's RFC analysis properly take into account the plaintiff's fecal incontinence impairment?

C.  Were there irregularities in the proceedings?

## VII.  DISCUSSION

A.  <u>The ALJ Did Not Appropriately Analyze Whether Plaintiff Had Engaged in Substantial Gainful Activity</u>.

To be entitled to DIB, plaintiff must demonstrate at step one that she was disabled on or before her DLI. *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999) (citations omitted). Because she applied for benefits almost a decade after the expiration of her insured status, she must also show that her alleged disability has existed continuously since her DLI. *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1458 (9th Cir. 1995).

The ALJ determined that plaintiff had not engaged in substantial gainful activity prior to her DLI. AR 20-21. However, he also found that the plaintiff engaged in substantial gainful activity in 1998 and 1999. AR 20, 29. During that period, plaintiff provided in-home care to her mentally retarded adult daughter. AR 88, 92, 126. According to plaintiff, she was paid by DSHS to "perform mothering tasks which [she] had been responsible for since her [daughter's] birth[.]" AR 168. Plaintiff received $592 per month for this work. AR 145. As plaintiff concedes, if this activity is substantial gainful activity, then her application must be denied. Dkt. No. 12 at 7.

"Substantial gainful activity is work activity that is both substantial and gainful[.]" 20 C.F.R. § 404.1572. It is work activity that involves doing significant physical or mental activity, even if it is done on a less than full time basis. 20 C.F.R. § 404.1572; *Lewis v. Apfel*, 236 F.3d 503, 515 (9th Cir. 2001). It must also be activity that is ordinarily done for pay or profit, even if none is actually realized. 20 C.F.R. § 404.1572(b); *Lewis*, 236 F.3d at 515. Thus, work that is part-time or that pays less than previously performed work can be substantial. 20 C.F.R. § 404.1572. Monthly earnings of $500 or more create a presumption that a plaintiff is engaged in substantial gainful activity. 20 C.F.R. § 404.1574.

REPORT AND RECOMMENDATION
PAGE -6

01         Plaintiff's in-home care for her mentally-retarded adult daughter may fall within the
02 definition of substantial gainful activity.  Plaintiff's contract with the DSHS Division of
03 Developmental Disabilities characterizes plaintiff as a "contractor" and describes a host of
04 duties she was to perform for her daughter, including physical assistance, coordinating medical
05 care, bathing, body care, meal preparation, providing transportation, and drafting written
06 progress reports.  AR 136-38.  These are significant activities ordinarily done for pay.
07 Additionally, the "consideration" section of the contract states that "DSHS shall pay the
08 [plaintiff] for attendant care services[.]"  AR 136.  At $592 per month, plaintiff earned more
09 than the monthly minimum amount that gives rise to a presumption of substantial gainful
10 activity.  Although plaintiff's duties may be characterized as "mothering," they also fall within
11 the definition of substantial gainful activity and should be characterized as such.

12         This, however, is not the end of the inquiry.  The regulations also provide that if the
13 work done is being performed under special conditions that take into account an impairment,
14 such work may not constitute substantial gainful activity.  These conditions could include
15 situations in which a person was allowed to work irregular hours or take frequent rest periods;
16 where a person was able to work at a lower standard of productivity or efficiency than other
17 employees; or where a person was given the opportunity to work because of a family
18 relationship.  *See* 20 C.F.R. §404.1574.  The plaintiff argued that she was able to do the work
19 involved only because she had family bathroom facilities nearby and could tend to her needs at
20 the same time that she assisted her daughter.  AR 420-22.  In this case, the ALJ did not accept
21 the argument that the work involved an accommodation to her impairment, but he failed to do
22 so in a way that took into account the extent of her impairment.  AR 20.  As discussed in
23 greater detail below in Section B, the ALJ discussed credibility issues generally, but failed to
24 deal with severity and frequency issues of plaintiff's fecal incontinence.  These issues have a
25 direct bearing on accommodation issues and should be dealt with on remand.

26         In addition, plaintiff argued that if the ALJ was going to consider the DSHS income as

REPORT AND RECOMMENDATION
PAGE -7

meeting the threshold for creating a presumption of substantial gainful activity, he should have deducted costs associated with plaintiff's care for her daughter from the $592 per month she received. Dkt. No. 12 at 22. The regulations provide a separate analytical framework for analyzing whether a self-employed claimant is performing substantial gainful activity, which includes a provision for deduction of costs incurred in performing work. 20 C.F.R. § 404.1575; *see also* SSR 83-34. The ALJ did not evaluate plaintiff's activity under this framework. However, given the language of plaintiff's contract with DSHS, it would be appropriate to analyze whether the plaintiff was performing substantial gainful activity after deduction of the costs involved in performing that activity.

       The Commissioner has argued that because the ALJ found that the plaintiff was able to perform her last job at step four of the disability sequential evaluation analysis there is no reason to remand for further consideration of these issues. However, because the Court is recommending remand for further proceedings relating to the extent of the impairment and the ability and willingness of an employer to accommodate the impairment, the step one factors cited above should also be considered.

       B.      <u>The ALJ's RFC Evaluation Failed to Evaluate the Plaintiff's Fecal Incontinence Impairment</u>.

       Although the ALJ found that plaintiff had engaged in substantial gainful activity after her onset, he nevertheless proceeded with the sequential evaluation process. At step two, the ALJ determined that plaintiff suffered from severe fecal incontinence and idiopathic hypereosinophilic syndrome and found that these impairments imposed "significant vocationally relevant limitations[.]" AR 21. The ALJ then analyzed the medical evidence and determined that plaintiff retained an RFC "to lift or carry 20 pounds occasionally and 10 pounds frequently. She could stand or walk for six hours in an eight hour work day. The claimant could sit for six hours in an eight hour work day. She could occasionally climb stairs, but could not climb ladders." AR 27.

REPORT AND RECOMMENDATION
PAGE -8

RFC is an administrative determination of a plaintiff's maximum remaining ability to perform sustained work activities on a regular and continuing basis. SSR 96-8p. It should take into account all of plaintiff's impairments, including mental and physical restrictions on her capacity to perform work-related activities. *Id.*; *see also Celaya v. Halter*, 332 F.3d 1177, 1181-82 (9th Cir. 2003). When evaluating RFC for the purposes of determining whether a plaintiff can perform her past relevant work, the ALJ must conduct a function-by-function analysis of her capabilities in light of all of the medical evidence. SSR 96-8p.

Here, the ALJ's RFC addresses plaintiff's exertional limitations on a function-by-function basis. However, the ALJ's RFC contains only boilerplate language but does not discuss plaintiff's fecal incontinence in terms of any non-exertional restrictions on her ability to work. Most notably, it offers no limitation regarding frequency of bathroom breaks, access to a bathroom, or how plaintiff may be required to tailor her eating habits to make it through a typical work day without having an accident. Indeed, during the hearing, the ALJ indicated displeasure toward the plaintiff's attorney when he attempted to develop the record on these very issues. AR 413-17. Although the Commissioner argues that there is no credible evidence to suggest plaintiff suffered from any additional limitations, this argument is undercut by the ALJ's step two determination that plaintiff's fecal incontinence caused "significant vocationally relevant limitations."[2] AR 21. The ALJ should have addressed these limitations in his RFC.

---

[2] While there is little contemporaneous medical evidence that bears on how plaintiff's fecal incontinence impacted her ability to perform work, she testified in graphic detail about the nature and extent of her impairment. She testified that she had virtually no control over her bowels, including feces and flatulence. AR 409. She stated that, after eating, she will be struck with a bout of incontinence in as soon as five minutes and suffer three to five additional bouts over the course of the next several hours. AR 397, 404, 408, 412. According to plaintiff, these episodes of incontinence can be unpredictable and can even occur when she is sleeping, several hours after she has eaten. AR 412.

Plaintiff also testified that adult diapers are not designed to accommodate the liquid stool she typically experiences, and indicated that her episodes of incontinence require both facilities in which she can clean herself and time for her to perform the cleaning. AR 403-10.

REPORT AND RECOMMENDATION
PAGE -9

The significance of the ALJ's failure to do so is highlighted by the testimony of the Vocational Expert ("VE"). The ALJ asked the VE whether someone with the plaintiff's limitations and a need to take two to four breaks per day would be able to perform her past relevant work. AR 439. The VE replied that four breaks would prevent her from performing her past relevant work, but that two breaks would not. AR 439.

The Commissioner argues that there are no records which suggest plaintiff had any limitations beyond what the ALJ found in his decision. Dkt. No. 16 at 12. Although there are few medical records from the period in question, plaintiff testified at length as to the nature of her condition and the impact it had on her ability to perform her past work. Additionally, Drs. Mohai and Aprill both offered opinions that suggest the frequency and severity of her symptoms are consistent with her severe impairment. AR 307-11, 317-20. The passage of time has resulted in the destruction of some of the plaintiff's medical records prior to her DLI. However, the fact that her doctors made retrospective diagnoses is not improper. *Smith v. Bowen,* 849 F.2d 1222, 1225 (9th Cir. 1988) (collecting cases) (indicating medical evidence developed after the expiration of a claimant's insured status is relevant to the evaluation of pre-expiration impairments).

Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998) (internal citations omitted). Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Smolen*, 80 F.3d

---

She testified that she attempted to time her meals around her daily work schedule, but that her incontinence has nevertheless resulted in personal soilage, stained clothes, and fecal leakage at work, in public, and in her car. AR 403-11. Plaintiff testified that she will frequently leave a "trail" of liquid feces as she rushes to the restroom and that she will have to spend five to twenty minutes cleaning herself and any mess she left behind. AR 415.

REPORT AND RECOMMENDATION
PAGE -10

at 1284; *Reddick*, 157 F.3d at 722. He must specifically identify which portions of plaintiff's testimony were not credible and what evidence undermined the claimant's complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ found that the plaintiff was "not totally credible." AR 29, Finding No. 5. He offered reasons to discount her testimony relating to the alleged autoimmune disease and bleeding disorder, as well as when her fecal incontinence began. AR 26. Here, however, it is not evident from the opinion that the ALJ specifically discredited her testimony as to the frequency and severity of her incontinence. AR 26-27. On remand, if he is going to reject plaintiff's testimony in this respect, he should provide an appropriate basis for doing so, consistent with *Smolen* and *Reddick*.

      C.      <u>Additional Issues on Remand</u>.

Plaintiff argues that the ALJ was biased, because he handpicked Dr. Nelp, the medical expert ("ME"), for the hearing, instead of using the expert typically provided by random rotation. Dkt. No. 12 at 18-20. She asks the Court to recommend that a different ALJ evaluate her case if remand is granted. *Id*. at 20.

Six weeks prior to the June 1, 2004, hearing, plaintiff submitted a letter to the ALJ, which expressed concern about the manner in which Dr. Nelp was selected to serve as ME for the hearing. AR 35. Plaintiff's letter suggested Dr. Nelp had not been selected from the ordinary rotation, as required by internal Social Security procedures. *Id*. It also stated that Dr. Nelp was among the most conservative MEs in Seattle and implied that the ALJ had selected Dr. Nelp out of bias. *Id*. The ALJ took no action with respect to this letter prior to the hearing.

At the hearing, prior to the ME's testimony, plaintiff's counsel advised the ALJ that no action had been taken with respect to the letter. AR 424. The ALJ noted plaintiff's objection and advised counsel that identical letters had been submitted in five other cases. *Id*. The ALJ told counsel he would not consider the objection unless counsel provided a "sworn statement"

REPORT AND RECOMMENDATION
PAGE -11

describing the facts which gave rise to plaintiff's concerns. AR 424. The ALJ then stated "And when I get that information, I'll deal with it. If I don't get the information, I won't deal with it. Okay?" *Id.* After further colloquy the ALJ again said he wanted "it in a sworn statement, under penalty of perjury." AR at 425.

On July 22, 2004, plaintiff's counsel sent a second letter renewing his concern and providing a sworn declaration from his legal assistant describing the situation that gave rise to his concern. AR 110-111. The ALJ issued his opinion on September 28, 2004. The opinion is silent on the issue of how and whether Dr. Nelp was selected intentionally out of rotation, and there is nothing in the record that indicates that the ALJ responded to the issue raised, as he said he would. The ALJ's opinion relied heavily on Dr. Nelp's medical testimony.

ALJs are presumed to be unbiased in the conduct of their official duties. *Rollins v. Massanari,* 261 F.3d 853, 857-858 (9th Cir. 2001). "This presumption can be rebutted by a showing of conflict of interest or some other specific reason for disqualification." *Id.* at 858 (quoting *Verduzco v. Apfel,* 188 F.3d 1087, 1089 (9th Cir.1999)). A plaintiff alleging bias must show actual bias. *Bunnell*, 336 F.3d at 1114-15. She must "show that the ALJ's behavior, in the context of the whole case, was 'so extreme as to display clear inability to render fair judgment.'" *Rollins*, 261 F.3d at 858 (*quoting Liteky v. United States*, 510 U.S. 540, 551 (1994)). Based on the record, the Court is unable to conclude that plaintiff has met this high standard, and this Court will not order remand to a different ALJ. Nevertheless, on remand, to eliminate any concerns about the process, the Court will direct the ALJ to appoint a new ME and to disregard Dr. Nelp's prior testimony.

Finally, when plaintiff appealed her case to the Appeals Council, she submitted additional medical evidence from Dr. Stephen Aprill. AR 317-20. Dr. Aprill is a gastroenterologist who has treated plaintiff since August 1998. AR 317. He offered an opinion as to the nature and frequency of plaintiff's incontinence and also addressed whether she met a listing. AR 317-20. This evidence was not reviewed by the ALJ. Although a

REPORT AND RECOMMENDATION
PAGE -12

reviewing court may consider evidence submitted to the Appeals Council, it is imprudent to render a decision to award benefits based upon such evidence when the ALJ has not had an opportunity to evaluate it. *Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000). Thus, on remand, the ALJ should also evaluate the opinion of Dr. Aprill.

### VIII. CONCLUSION

For the reasons discussed above, the Court recommends that the ALJ's decision be reversed and that this case be remanded for further proceedings not inconsistent with this Report and Recommendation. A proposed order accompanies this Report and Recommendation.

DATED this 2nd day of February, 2006.

*/s/ James P. Donohue*
JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE -13